Case number 18-4186, Rebecca Morehouse et al. v. Steak N Shake. Argument not to exceed 15 minutes per side. Mr. Matheson, you may proceed for the appellant. Thank you. Please, the court. I will reserve four minutes for my rebuttal. I represent the defendant below and the appellant here, Steak N Shake Inc. Your Honors, I'll give you a brief recitation of the facts that are critical, at least to the issues before the court. Starting with Mrs. Morehouse's employment by my client not too long before she went out of work in 2011. At the time she was employed, she was provided with their administrative manual or what might be called a handbook. There is a checklist that's part of the record that she indicated that she went through that and reviewed it. One of the specific checklist items that she indicated she reviewed and received at the time was the section of the handbook on FMLA. She also, at that same date and time, signed that she received a FMLA rights paper that is also part of the record that the court has. She worked as an assistant manager and in May of 2013 she fell at her knee and she tried to return back to work, but ultimately requested a leave that was effective May 26th of 2013. She actually requested a leave a few days later on June 2nd. Within three days, my client sent a letter to her indicating that it was treated as a FMLA leave and in fact provided her the forms that she would need to be signed by her doctor if in fact she was going to pursue is a FMLA leave, so the certification from the healthcare provider. That letter indicated that if she did not return that in a timely fashion, that the FMLA leave would not be accepted. The record shows in Ms. Morehouse's deposition testimony indicates that she did return. She had her doctor complete that form, sent it in, that she was in fact told that she was on FMLA. How was she told? She was told by state and state. In what context? In a verbal context as far as I understand, Your Honor. Who was the person who told her? I do not know that answer, Your Honor. She just indicated in her deposition that the question was asked was she told that she was on FMLA and she answered affirmatively yes. And she also answered in her deposition that she understood that upon returning the forms, the doctor's certification, that she understood that FMLA was approved. She also was, at the same time, because she heard herself at work, she had a workers' compensation claim and she was receiving workers' compensation benefits. Counsel, help me here in terms of what really happened and what her gripe is. Sure. So her insurance had been being paid out of her paycheck. Then it was being paid out of her workman's comp. The workman's comp stops at a certain point, and I didn't understand why did it stop at that point. Was that just a glitch and is that why you settled with her for $15,000, that it shouldn't have been stopped at that point? No, and Your Honor, I was not involved in that in kind of two parts of the company. But I think the answer is that there was a dispute over whether she was entitled to continuing workers' compensation benefits. They ultimately resolved that dispute through the settlement of FMLA. Okay, so whether you were wrong or not, you did settle so it wasn't obvious that something had run out. It wasn't that the FMLA leave had run out or that the weeks of workman's comp had run out, right? That's correct, and it wasn't clear later as far as the record reflects that the workers' compensation stopped. As far as I believe everyone understands, it was a purposeful terminus of cessation of the workers' compensation. So your position at that point was that she could have kept the insurance if she had simply paid it out of her private funds, although that obviously would be more difficult for her than having it deducted, right? Administratively, yes, but certainly much better for her and much more favorable than, quite frankly, the result that she asked for here that the district court found we should have done. The district court and Mr. and Mrs. Morehouse suggested when she went out of work in May of 2013 that she should have promptly received a COBRA notice. As the court may know, and it is in the record, prior to her going out of work and actually continuing, her premium was about $300 a month. The COBRA premium is 102% of the premium, so it was over $1,000. Under the terms of the plan- I'm sorry, I don't understand the math of that. Yep. 102% of 300 is 360. I'm sorry, Your Honor. While somebody's employed, the employer is picking up a large percentage of that amount. When they are offered COBRA, because they're no longer employed, they pay it all in actually a 2% administrative fee. So the fact that my client actually, under the terms of its plan, it had to continue to let her participate in the plan because she was still, even though she was not working any hours, because she was out on a disability leave, she was considered an active employee. Under the specific terms of this plan, maybe different than others, including the Pennsylvania District Court case that the District Court judge relied upon, there are other plans that that wouldn't be the case. But here, in an extremely favorable situation to Mrs. Morehouse, her husband, even though she wasn't working, as long as she, in whatever means or fashion, as long as she paid her contribution, the same contribution she had always paid, she would get to continue to participate in the plan. And furthermore, if at some point she ultimately was terminated and couldn't come back to work as she was, she would then still be entitled to those COBRA rights and a COBRA notice at that point. So did she get a COBRA notice after you finally did terminate her? No, because by the time – so she stopped paying her premiums effective August of 2013. Her employment still was in effect until February of 2014. So at the time she was terminated, she was no longer a participant in the plan. So she was still technically an employee, but she was not a participant in the plan, therefore no COBRA notice. Correct. And by that time, she had also purchased replacement coverage that she found at a rate somewhat comparable to the employing rate. Our position is that if you look at the – a COBRA notice is only required if there is a loss of coverage. And there was no loss of coverage for her. And that's because loss of coverage is a prerequisite to being a qualifying event. It is not the way it goes. The statute starts with qualifying event. What is a qualifying event? Part of being a qualifying event, in your view, is loss of coverage. In fact, it's part of the statute, to be honest. So you're correct. A COBRA notice is only required for a qualifying event applicable to the facts here. It could be a qualifying event when you have a reduction in hours, so she certainly had a reduction in hours. But then the statute goes on to say a reduction in hours that results in a loss of coverage. And there would certainly be plans, like the plan in the Alquino case, that somebody might lose coverage under those circumstances, but not here. Also significant, and where we believe that the lower court got it wrong, is that in the – again, a non-binding Pennsylvania district court case, it did not have specific terms about payment. It didn't have a – like our plan, actually a definition of loss of coverage that says you lose coverage only if you are terminated and not continuing on as an active employee. And so that in that Alquino case, the court had to infer the terms and conditions or methods of payment. Here there is no such need to infer because the plan itself talks about the fact that if – that the – number one, the plan can substitute paid or unpaid leave. So somebody can be out on workers' comp and FMLA and it can substitute those. And that if the benefits are not paid or the contributions are not paid through the normal course, then they can be made in any alternative fashion. So there is no need to infer or to speculate about what kind of terms and conditions apply. In fact, here the plan is specific. In fairness, I think it's important. And quite frankly, we have the – if the district court's position is upheld, it would mean that my clients would have to violate their own ERISA plan, subject themselves to a lawsuit for a claim for benefits under ERISA, a breach of fiduciary claim under ERISA. It would have had to charge Mr. and Mrs. Morehouse $700 more a month during the time that they were covered. They would have – I think all the – all that Mrs. Morehouse is arguing is that she was just entitled to notice of the COBRA, not that the COBRA actually had to be implemented. Isn't that what she's arguing? She is arguing that – well, I don't know what the effect of it is. So that wouldn't really violate the plan, would it? Well, if they told her that she was – because a COBRA notice is issued if you're losing coverage. So they would have to violate the plan by saying she's losing coverage, and the only way to maintain it would be to elect COBRA. Well, that's assuming the loss of coverage is occurring immediately. Couldn't loss of coverage occur in the future? Doesn't the regulation talk about would result in the loss of coverage? Her position is that it occurred in May of 2013. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, I'm Sonia Walker, and I'm here on behalf of Mrs. Morehouse. The issue before this Court is what she knew and when she knew it, and was she able to make informed decisions under the plan? That's the purpose of your recent notice of requirements. Steak and Chick did not provide a COBRA notice. That's not in dispute. It also did not actually fulfill its FMLA notice obligations such that she could have understood that she was on FMLA. Contrary to the statements here today, she didn't know she was on FMLA. She testified consistently throughout her deposition that she understood FMLA leave to be unpaid leave. She knew that her workers' comp leave had been approved and the payments for her insurance were changed from being deducted from her paycheck to being deducted from her workers' compensation payments. She had no idea when her workers' compensation payments were end. They unexpectedly ceased. She didn't understand why. Steak and Chick fought for workers' compensation, got her compensation payments turned off. Then they claimed, well, we didn't have to provide her COBRA notice because she was on FMLA. Oops, sorry. We failed the FMLA notice requirements. That's okay because now we can retroactively designate FMLA to avoid having to send COBRA to her. She was given a month to catch up. I mean, what were their communications from Steak and Chick telling her that if she made these payments? Twenty-three days. From September 9th when she received the first e-mail from Eric Solaters until her benefits were terminated on October 3rd. And they were terminated back to August 14th, the last day that she had made her payments through workers' comp. During that 23 days, she still was expecting to receive a workers' compensation check. No one had told her that her workers' compensation had been turned off. And why was that? Was that the fault of the workers' comp system? Normally when something that you're getting is turned off, you get a notice from somebody. Was that supposed to have come from the company or from the state or do you know? I don't know. Okay. I don't know. When exactly, in your view, should they have given her the COBRA notice? When was the qualifying event that would have triggered the obligation, right? Correct. The COBRA notice should have come within 44 days of the qualifying event. The qualifying event would have been May 26th when her reduction in hours, her work injury caused a reduction in hours that changed the terms and conditions under which she would have made her payments. Okay. So that's the beginning of her leave, whatever the leave was. Well, that's the beginning of her leave and also the date of her qualifying event. State and CHIP had 44 additional days to provide her that. Okay. Had they done so, what would have happened at that time? She would have had two and a half months to come up with a way to figure out how to continue her insurance and avoid loss of coverage. But instead, she in fact had no loss of coverage, right? They just continued. So in that sense, isn't your adversary right that she was better off in terms of what was happening then that the evil occurred when the workman's comp was cut off and that was what she settled or they settled? I mean, your client was hard used. I don't have any trouble with that. But isn't what caused it was the cutting off of workman's comp, which was settled? No, because the actual change in the terms and conditions of her payment are an essential portion of the plan. The court in Aquilino actually stated that… No, I understand what you're saying. But as a procedural error, you have a plausible case, but I just want to make sure I understand the practicalities. The only reason she has a complaint was that they cut off her workman's comp, which then required her to pay the insurance out of her own funds sometime down the road. If they had sent the COBRA notice, she would have had to scramble and pay out of her own funds for the loss of coverage. Is that pretty much practically… That's correct. Okay. But at least she would have had knowledge and an ability to plan for that loss of coverage. Steak and Chick took that away from her, the ability to plan. In Burgess, the Western District of Michigan, found that the qualifying event triggering the COBRA continuation notice occurred at the reduction in hours. The fact that the employer continued the coverage after that date did not affect that determination. So in Burgess, his reduction in hours happened on one date. That led to a change in the terms and conditions of the employment and the loss of coverage. The court found that that was the date of the qualifying event. But the plaintiff in Burgess was arguing the qualifying event occurred on his termination date, which happened much later. Now, the plaintiff in Burgess had the advantage of working with the employer. And the employer in Burgess negotiated that he would continue paying plans through workers' comp so that he could continue his insurance for an additional 18 months. So therefore, the court said, well, the lack of COBRA notice is not a basis for extending an additional 18 months when the employee actually got 18 months of coverage under the plan. But the fact that the plan allowed him to continue his coverage did not change the qualifying event. That didn't happen here. If things were done the way you said, and you say she would have had whatever, two and a half months, but that would have required for that to be true, wouldn't there have to have been a loss of coverage impending either immediately or after that two and a half months? In other words, if they had sent the COBRA notice the way you say, and then you say she had two and a half months to scramble and come up with coverage, that would mean they were going to cut off her coverage. No, because the statute, the Code of Federal Regulations defining a qualifying event states that a qualifying event must lead to a loss of coverage under the same terms in effect existing immediately before the qualifying event. So the loss of coverage occurred on May 26th. And that rests on defining the loss of coverage as changing the place where the money comes from. Exactly. Okay. And that in turn depends upon defining the phrase terms and conditions to include the method of payment. Right, right, right. And we're relying on this Pennsylvania case for that proposition. I mean, is there anything else? No, except that also in the Burgess case, the court said the fact that the employee was continued on the plan didn't affect the date of the qualifying event. The fact that he was still allowed to continue his coverage, it didn't affect the qualifying event. It just—in Burgess, the plaintiff was arguing the qualifying event happened upon termination. And the court said, you know, he already got 18 months of coverage. He doesn't get an additional 18 more. The same sort of, I would say, misapplication of cases is being applied by state and state to argue that it was irrelevant that they failed their FMLA employee notice requirements. Basically, they say they're entitled to retroactively designate. But those cases refer to FMLA entitlement cases. So employees who already got 12 weeks can't argue FMLA notice failures to get an additional 12 weeks. The United States Supreme Court in Ransdale did not invalidate the FMLA notice requirements. They invalidated the penalty provision requiring employees to provide an additional 12 weeks. The employee notice requirements still exist. And even in this case, had they actually notified her that she was on FMLA, had they satisfied the employee notice requirements, then she would have known that no matter what happened with workers' comp, she would have had to pay the premiums at least for the first 12 weeks. Okay? Her premiums were paid through August 14. Her insurance was canceled on August 19. Five days more of a premium payment would have gotten her the COBRA notice election coverage. So she then would have had another two and a half months to figure out payments. Maybe I misheard you, but I thought you just said that if she had gotten the notice, she would have had to pay the premiums for the 12 – If she would have been properly notified that Stake and Shake was concurrently running her FMLA and her workers' comp. Actually, under the Rights and Responsibility Notice. No, I want you to answer the question about – I thought I heard you say that if they had done it right, she would have had to pay the premiums for the first 12 weeks. She would at least have understood that regardless of what happened with workers' comp, she would have had to have that payment ready to go for the first 12 weeks. Then it would have bought her an additional two and a half months. But she didn't have to pay the premiums for the first 12 weeks. They paid them. They withdrew them from her workers' compensation check. Okay. Right. She was only missing five days of a premium payment that would have entitled her at the expiration of her FMLA leave to a COBRA notice. So had she known she was on FMLA leave, had she known that that meant that her workers' comp and her FMLA leave was running concurrently, had she understood that she was responsible for those payments during her FMLA leave regardless of what happened with her workers' comp, she could have planned ahead at least to buy herself an additional two and a half months of her COBRA notice because at the end of her FMLA leave, she would have been entitled to a COBRA notice. And in fact, in Jordan, which state and state relies heavily on, the plaintiff took leave, took a leave of absence, then received – made no payments. The employer covered the employee for months following the leave of absence without taking any deductions from short-term disability or any direct payments from the employee, and then finally figured out that they weren't making their payments anymore. So the court said at termination there was no qualifying event. The court never considered whether the taking of leave was the qualifying event. And in fact, the employee didn't want them to consider that leave because the employee did not want to have to pay a COBRA premium dating all the way back to the initial taking of leave. The employer had a leave of absence provision in its policy which stated that applicable contributions must continue to be made to the plan in order to retain coverage during your leave of absence. The plaintiff saw it as a leave of absence. There is no such leave of absence provision in Steak and Shake's plan, nor is there any provision governing the interplay between workers caught in the FMLA and Steak and Shake's plan. In fact, the reference to Mrs. Morehouse's duty to continue making her premium payments falls within the FMLA portions of the plan. She didn't request FMLA. She didn't understand she was on FMLA. And while Steak and Shake is able to go ahead and retroactively place her on FMLA, they have to notify her. They have to satisfy the notice requirements. And the district court properly found that because they failed those notice requirements and because there was no actual or constructive notice that a workers' comp leave and her FMLA date ran concurrently, that she was not on FMLA at the time of her qualifying. Your adversary tells us that her deposition, she was asked, was she on FMLA? Was she told that? And she said, yes. Is he wrong about that, or is there a distinction somewhere that I'm not getting? She testified that at all times during her leave, she did not understand she was on FMLA. So her statement is just flatly wrong? No, it's not flatly wrong because on September 20th, she received a letter from the company terminating her FMLA. And incidentally, Steak and Shake did not provide us with that letter, despite our discovery request. Mrs. Morehouse turned it over herself. September 20th, she got a notice saying, your FMLA terminated on August 19th. So you're saying his statement is true only with respect to having been told that subsequently? Correct. All right, I'll ask him to come to me. Correct. So the question here is, was she given a proper opportunity to make informed decisions about her plans? The answer is clearly no. First of all, the undisputed evidence shows there was no COBRA notice sent. In Jordan, as a matter of fact, the employer, recognizing that it failed some of its notice requirements, did send a COBRA notice to the plaintiff, a belated COBRA notice. And the court said, you know, the employer demonstrated a concerted effort to remedy its notice failures, including retroactively sending a COBRA notice. Steak and Shake has not done that. They didn't properly designate her FMLA leave. They cannot retroactively claim she was on FMLA leave. Doing this basically means the employer, FMLA employer notice requirements are meaningless. And also, anyone who is on workers' compensation leave, whose workers' compensation payments unexpectedly ceased, now are not entitled to a COBRA notice. If Steak and Shake forgets to send one. This is their saving grace. That's not what the intention of the ERISA notice provisions were intended to do. They were intended to communicate to the employees so that they understand the terms and benefits and can make informed decisions to avoid a gap in coverage or a loss in insurance. Thank you. Thank you. Sorry. I could ask one more thing. Just when you said that she wouldn't have gotten it. Had she continued to make the payments out of her own funds the way they had informed her, then wouldn't she have gotten a COBRA notice whenever that ran out? Because then there would have been a loss of coverage under their interpretation. The plan is silent as to exactly when. Some of the plans say you have so many months on leave and, therefore, you're waiting. In this case, they did send her information that said you want to keep the insurance, pay up. Had she done so and then lost coverage at a future point, she would have been entitled to a COBRA notice at that point, even under their theory. Correct. Okay. Thank you. Your Honor, in regards ‑‑ let me provide you the deposition page and record sites. It's the record site, page 229, and it's Mrs. Morehouse's deposition, page 36, lines 22 to 20 ‑‑ I'm sorry, 23 to 25. Again, she was asked, were you told by State and State that you were an FMLA lead? She answered yes. I guess my interpretation of that and in that context, it was at the time, not that she didn't just learn about it years later. Similarly, at ‑‑ Yeah, but the deposition doesn't enlighten us as to whether she's correct about she only learned it when she got this letter as opposed to exactly when she learned it earlier, which is your view. Right. It does not say when did you learn it. And similarly, she was asked if she knew that after she returned the certification, if her FMLA was approved, and that's at the page 227. The certification is the doctor's certification back at the beginning. Which begs the point, Your Honor. If she did not know anything about FMLA and if she didn't want FMLA, if she only wanted to work as a cop, she would have gotten that letter saying you need to do this and turn it in, and she would have thrown it away. She wouldn't have gone to the steps of having her doctor affirmatively request FMLA lead for her. So she did request it. In the plan terms here at the record sites 392 and 504, they say, this is what the plan says about payments, that if there's nonpayment, that they plan to terminate your coverage generally effective immediately upon their written notice to you. So it doesn't say that the terms and conditions were withhold them from your paycheck or withhold them from your worker's cop check. So there were no change in the terms and conditions of the plan from the day that Mrs. Morehouse was at work and the day that she went off of work or the day that she was having the payments withheld from her worker's cop check and the day that she would have had to make those payments directly. And in fact, the Jordan case that this – the only Sixth Circuit decision that's on point is the Jordan case. And in that case, the facts are amazingly similar in that there were complaints about the employer not providing FMLA notice. And the court said because that wasn't appealed, this court held that it was FMLA lead because they did not follow the technicalities. So whether – I think they're two different issues. Whether somebody's on FMLA lead and whether there was proper notice and so forth are two different issues. And it's significant because, like in Jordan, if somebody – beyond my argument that I made first, that under the plain terms of our plan, she did not lose coverage, she couldn't lose coverage. If we had issued her a COBRA notice, we would have violated ERISA and the terms of the plan to her detriment because, in fact, she would have had less time. She would have had to make that COBRA election September 9th instead of having until October 2nd to remedy her short pay here. But second, because she was clearly FMLA-applied, she sought it by turning in that certification. When somebody is on FMLA lead, that's also a specific exception to a – it's not a qualifying event. So because she was on FMLA, no notice was required. In the last few minutes, Your Honors, I would just – alternatively, we believe you should reverse the district court. But at the very least, there was no ill will. There wasn't any prejudice to Mrs. Morehouse. In fact, they saved money as a result of my plan keeping her on the plan. Therefore, we ask that you would vacate the penalty and the attorney fee award as well. Thank you. Is there a matter of the Honor's decision?